BLAUSEY, APPELLANT, *v.* STEIN, APPELLEE.

[Cite as Blausey v. Stein (1980), 61 Ohio St. 2d 264.]

(No. 79-471 — Decided February 20, 1980.)

*Messrs. Kline and Corogin,* and *Mr. Dale A. Kline,* for appellant.

*Mr. Jonathan B. Cherry,* for appellee.

HOLMES, J. The primary term of the lease under consideration expired in 1939. The resolution of this appeal turns upon the meaning of the phrase "found in paying quantities" contained in the *habendum* clause.

In *Murdock-West Co.* v. *Logan* (1904), 69 Ohio St. 514, 520, this court held that the mere existence of oil which is capable of being produced is insufficient to support an extension of the leasehold under this type of lease, unless that oil has, in fact, been produced. The record indicates that appellee extracted oil in the period from 1971 through 1976. We must determine whether this oil was produced in "paying quantities."

The term "paying quantities," when used in the *habendum* clause of an oil and gas lease, has been construed by the weight of authority to mean "quantities of oil or gas sufficient to yield a profit, even small, to the lessee over operating expenses, even though the drilling costs, or equipping costs, are not recovered, and even though the undertaking as a

whole may thus result in a loss." Annotation, 43 A.L.R. 3d 8, 25. In this cause, the well operated by appellee has been only marginally productive, and the determination of whether it produces in paying quantities hinges upon whether the value of appellee's own labor must be treated as an operating expense.

The trial court determined that appellee sustained a net operating loss during the six-year period for which evidence was introduced. In reaching this conclusion, the court found that appellee's gross receipts of $2,220.28 were exceeded by his operating costs, which the court calculated as $3,741.04, including the sum of $2,887.50 as the value attributed to appellee's labor. On appeal to the Court of Appeals, neither party contested the base period utilized by the trial court; rather, the dispute centered upon whether the value of appellee's labor should be included as a component of operating costs. The Court of Appeals held that it should not. We agree.

Appellee performs all the labor necessary to produce oil from the leasehold. He has made no direct expenditures from gross receipts for labor. The fact that a lessee can keep operating costs at a minimum should inure to his benefit in a determination of whether a well produces in paying quantities. See *Weisant* v. *Follett* (1922), 17 Ohio App. 371.

Because an oil and gas lessee bears the risk of non-production in a lease of this kind, we believe that appellee should be allowed to attempt to recoup his initial investment for as long as he continues to derive any financial benefit from production. It is clear that appellee derives a small income from the sale of the oil he produces. We hold that this well is producing in paying quantities. The trial court erred in including the value of appellee's labor in its computation of operating expenses.

Appellant argues, however, that the trial court's termination of the lease is sustainable on a separate ground. She claims that the lease contains an implied covenant to operate the well as would an ordinarily prudent businessman, and that by failing to sell oil for a period of nearly four years, appellee has breached the covenant and forfeited the lease. Without passing upon the validity of this contention, we note that it was not raised in the courts below. The issue is not,

therefore, properly before us. *Republic Steel Corp.* v. *Bd. of Revision* (1963), 175 Ohio St. 179.

Appellant argues further that she has an unqualified right under the lease to receive royalty payments, and that she is not required to sign division orders as a condition of payment. She contends that the imposition of such a condition is an attempted modification of the lease agreement. This claim is without merit.

A division order is a direction and authorization to the purchaser of oil to distribute the purchase price in a specified manner. Its purpose is to assure that the purchaser pays only those parties who are entitled to payment. See 4 Williams, Oil and Gas Law, Section 701. By signing the division order, the lessor is simply verifying that he has a right to royalty payments.

The record indicates that appellant has refused to sign a division order for the oil sold by appellee in 1975. Because of her refusal, the purchaser has not tendered payment for accrued royalties. The trial court found the requirement that appellant execute a division order to be an attempted modification of the lease, and ordered appellee to account for accrued royalties. The Court of Appeals reversed. We hold that the requirement that appellant execute a division order prior to receiving her royalty payments does not contravene any specific provision of the lease, and is not such a burden that it can be considered an attempted modification of the agreement.

Because we have determined that the lease remains in full effect, we need not address appellant's arguments regarding removal of the well casing and other equipment from her land. She has no right to removal of this equipment at the present time.

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.