[Cite as *Holland v. Gas Ents., Co.*, 2016-Ohio-4792.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| CHAD AND DIANIA HOLLAND, ET AL., | : | Case No. 15CA42 |
| Plaintiffs-Appellees, | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| GAS ENTERPRISES, CO., ET AL., | : | |
| Defendants-Appellants. | : | **RELEASED: 6/28/2016** |

<u>APPEARANCES</u>:

John E. Triplett, Jr., THEISEN BROCK, L.P.A., Marietta, OH, for appellant Gas Enterprises, Co.

Ethan Vessels, FIELDS DEHMLOW & VESSELS, L.L.C., Marietta, OH, for appellees Chad and Diania Holland, and Gregory and Brenda Westbrook.

Harsha, J.

{¶1} The trial court granted summary judgment in favor of the Hollands and Westbrooks ("landowners") by ordering that a mineral lease be declared void because oil or gas had not been found in paying quantities necessary for the lease to remain in effect. Gas Enterprises, Co. ("Gas Enterprises"), one of the successors-in-interest to the original lessee, appealed.

{¶2} This matter is before us for a second time on the issue of the continued viability of oil and gas lease.[1]

{¶3} Gas Enterprises claims that the trial court erred in granting summary judgment because: (1) there was unrebutted evidence of production in paying

---

[1] *See Holland v. Gas Enterprises Co.*, 4th Dist. Washington No. 14CA35, 2015-Ohio-2527.

quantities by the operator and another expert; (2) the landowners' claims were barred by the statute of limitations; and (3) the court failed to evaluate the equitable issues and the adequacy of a remedy at law.

{¶4}   We reject Gas Enterprises's claims.  According to its own records, including forms it filed with the Ohio Department of Natural Resources ("ODNR") and the Washington County Auditor's Office, Gas Enterprises affirmatively reported that no oil or gas was produced from the wells it operated on the landowners' property in 2006, 2007, 2008, 2012, and 2013.  The affidavit of Gas Enterprises's manager conceded that the company did not have any actual sales for these years, but asserted that its bookkeeper did not report production when there were no sales.  The manager stated that the wells produce oil on a slow, but consistent basis, but did not specifically state that any oil was produced during the years specified in its reports as having no production; instead, he only stated that year-by-year production figures could not easily be obtained.  The affidavit of a landman for a sublessee, who had conducted a due-diligence review on the assignment of deep rights in the land, stated in a conclusory manner that the sublessee had examined the production history for the wells and determined that they operated to provide sufficient and paying quantities.  Neither of these conclusory affidavits is sufficient to raise a genuine issue of material fact precluding summary judgment in favor of the landowners.  The summary-judgment evidence established that the lease expired by its own terms when no oil or gas was found in paying quantities for at least two years, i.e., from 2006-2008 and 2012-2013.

{¶5}   Contrary to Gas Enterprises's claims, the statute of limitations is inapplicable because the landowners' action was not based on an alleged breach of the

lease; rather the landowners sought to declare the lease had expired automatically under its express terms. Moreover, the landowners filed their action in the underlying case in early 2014, which was only a few months after the last two-year period in 2012 and 2013 in which no oil or gas was found in paying quantities in the wells. Therefore, even assuming—as Gas Enterprises contends—that the R.C. 2305.041 four-year statute of limitations applied, the statute did not bar the landowners' claim.

{¶6} Likewise, the equitable defenses raised by Gas Enterprises are also inapplicable because the oil and gas lease expired as a matter of law in accordance with its own terms.

## I. FACTS

{¶7} In March 2014 Chad and Diania Holland and Gregory and Brenda Westbrook filed an amended complaint in the Washington County Court of Common Pleas against Gas Enterprises, MNW Energy, L.L.C. ("MNW Energy"), and Triad Hunter, L.L.C. ("Triad Hunter"). The amended complaint and admission in Gas Enterprises's answer establish that the Hollands and the Westbrooks ("landowners") own approximately 40 acres of real property located in Ludlow Township in Washington County.

{¶8} In 1930 the predecessors-in-interest to the landowners leased the oil and gas rights in the property to D.B. Yaw for the term of "[o]ne year from the date hereof and as much longer as gas or oil is found in paying quantities thereon." Four wells that were drilled under the lease remain on the property.

{¶9}   Gas Enterprises obtained the lessee's interest in 1996.  Gas Enterprises subleased the deep rights to oil and gas to MNW Energy in July 2013; MNW Energy in turn assigned its interest in the sublease to Triad Hunter in December 2013.

{¶10}  In their amended complaint the landowners alleged that the production from the four wells on the property had not been sufficient to hold the lease, resulting in its expiration under its own terms.  The landowners requested a judgment declaring that the oil and gas lease, sublease, and assignments were forfeited and void because they expired when there was insufficient production of oil or gas.  They also claimed Gas Enterprises, MNW Energy, and Triad Hunter had breached various implied covenants.  The named defendants filed answers denying the landowners' claims.

{¶11}  The landowners subsequently filed a motion for summary judgment.  They attached Gas Enterprises's "Ohio Well Completions Reports," which the company filed with ODNR; these reports showed that the four wells had produced no oil or gas in 2006, 2007, 2008, 2012, and 2013.  They also attached Gas Enterprises' responses to their discovery requests, which indicated that "Gas Enterprises (lease), Upper Fifteen Mile Investment (override) and Triad Hunter (sublease)" claimed interests in the wells.  In those responses Gas Enterprises also stated that the wells were primarily oil wells, that there was oil in the tanks that could be sold, and that yearly comparisons of oil sales could not be easily obtained because sales were done in lots or loads.

{¶12}  Gas Enterprises and Triad Hunter filed affidavits and memoranda in opposition to the motion for summary judgment.[2]  Both filed an affidavit of James Williams, the manager of Gas Enterprises, in which he stated:  (1) the wells had been

---

[2] The landowners voluntarily dismissed MNW Energy without prejudice because it no longer had an interest in the leased property.

assigned to Gas Enterprises; (2) Gas Enterprises had owned and operated the wells since that time; (3) the wells produced oil on a slow, but consistent basis; (4) oil sales are done in lots or loads because of irregular production and transport charges; therefore, year-by-year production figures cannot be easily obtained; (5) there were alleged gaps in reported production in 2006, 2007, and 2008—it did not have actual sales in those years, so the company bookkeeper did not report production; the manager had since instructed the bookkeeper to report production regardless of sales; (6) Gas Enterprises continues to operate the wells and believes they are paying in sufficient quantities to be economical for the company based on the total costs of operation; (7) the company continues to invest in well operations, by providing and upgrading electrical service, changing to new pump jacks, running lines, and paying for acid treatments on the wells; and (8) in the company's discussions with one of the landowners, the landowner expressed concerns that the company bury the lines it installed and that it not operate the wells during deer gun season.

{¶13} Triad Hunter filed an affidavit of Jarrett Barnhouse, an employee working as a landman, whose duties include the review of due-diligence analyses for lease interests acquired by Triad Hunter. Barnhouse stated that: (1) when Triad Hunter was assigned MNW Energy's interest in the sublease for the deep rights in the oil and gas lease, Triad Hunter completed its due-diligence review; (2) as part of this review, Triad Hunter examined the production history for the wells; (3) Triad Hunter determined that the wells were prudently operated to provide sufficient and paying quantities to be economical and therefore held by production by Gas Enterprises; and (4) based on its

review, Triad Hunter determined that two of the landowners each held a royalty interest in the wells.

{¶14} The landowners later supplemented their motion for summary judgment with additional discovery provided to them by Gas Enterprises. These documents, entitled "Ohio Return of Oil and Gas Properties," were Gas Enterprises's own forms prepared for filing with the county auditor stating that for 2001 through 2013, no oil or gas had been produced by the wells on the property, except for 2010 and 2011.

{¶15} The trial court entered summary judgment in favor of the landowners. The trial court found that oil or gas had not been found in paying quantities necessary for the lease to remain in effect and declared the lease, the sublease, and assignments void.

{¶16} In Gas Enterprises's appeal we held that the trial court erred in granting summary judgment in favor of the landowners when they failed to join Upper Fifteenmile Investments, LLC ("Upper Fifteenmile") as an additional defendant in light of its overriding royalty interest in the lease. *Holland v. Gas Enterprises, Co.*, 4th Dist. Washington No. 14CA35, 2015-Ohio-2527. We reversed the judgment of the trial court and remanded the cause for further proceedings. *Id.*

{¶17} On remand the landowners filed a second amended complaint adding Upper Fifteenmile as a defendant and reiterating their prior claims. The landowners filed another motion for summary judgment, relying on the same summary-judgment evidence it previously had, including Gas Enterprises's own records establishing that the company had reported to both ODNR and the county auditor that it had produced no oil or gas on the property's four wells in 2006-2008 and 2012-2013. Triad Hunter refiled its previous affidavit of its employee, Barnhouse. Gas Enterprises and Triad Hunter

also filed a second affidavit of Gas Enterprises's manager, Williams, who reiterated the statements from his previous affidavit, but also acknowledged the gaps in production in the additional years of 2012 and 2013.  Williams also stated that since Gas Enterprises took over the wells in 1996, the company had restored them to production and that he "believe[s]" the company "showed a profit in all years since 2006 to the present."

{¶18}  After its review of the evidence, the trial court again entered summary judgment in favor of the landowners.  The trial court again found that oil or gas had not been found in paying quantities necessary for the lease to remain in effect and declared the lease, the sublease, and the assignments void.  This appeal by Gas Enterprises followed.

## II. ASSIGNMENT OF ERROR

{¶19}  Gas Enterprises assigns the following error for our review:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO
THE PLAINTIFF-APPELLEE ON THE RECORD BEFORE THE COURT.

## III. STANDARD OF REVIEW

{¶20}  Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56.  *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19; *Chase Home Finance, LLC v. Dunlap*, 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, ¶ 26.  Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made.  Civ.R. 56(C); *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio

St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24; *Settlers Bank v. Burton*, 4th Dist. Washington Nos. 12CA36 and 12CA38, 2014-Ohio-335, ¶ 20.

**{¶21}** The moving party has the initial burden of informing the trial court of the basis for the motion and identifying the parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party satisfies this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts to show that a genuine issue exists for trial. *Id.*; *Chase Home Finance* at ¶ 27.

**{¶22}** Additionally, this case involves the interpretation of a written contract, which normally is a matter of law that we review de novo. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 14, quoting *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9 (" '[t]he construction of a written contract is a matter of law that we review de novo' "). Our role is to ascertain and give effect to the intent of the parties, which is presumed to lie in the contract language. *See Arnott* at ¶ 14. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus, superseded by statute on other grounds, *Harding v. Viking Internatl. Resources Co., Inc.*, 2013-Ohio-5236, 1 N.E.3d 872, ¶ 12 (4th Dist.).

**{¶23}** In our context "[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument" and "[s]uch leases are

contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897); *Harding* at ¶ 11.

## IV. LAW AND ANALYSIS

### A. Expiration of Lease on its Own Terms:

### Lack of Oil and Gas Production from 2006-2008 and 2012-2013

**{¶24}** The trial court did not err by declaring the oil and gas lease terminated as a matter of law by its express terms. The oil and gas lease contains a habendum clause with a primary and secondary term. The primary one-year term expired in 1931. The secondary term extends the lease for as much longer as "gas or oil is found in paying quantities." In this context the word "found" is synonymous with the word "produced." *See Tedrow v. Shaffer*, 23 Ohio App.510, 155 N.E. 510 (4th Dist.1926) ("We see reason for holding that the word 'found' as here used is synonymous with the word 'produced,' since oil in the ground cannot be said to be 'found' until it is brought to the surface, and when brought to the surface is then 'produced' "); *Blausey v. Stein*, 61 Ohio St.2d 264, 265, 400 N.E.2d 408 (1980) (interpretation of the phrase "found in paying quantities" in the habendum clause of an oil and gas lease turned on whether oil or gas was produced in paying quantities because "the mere existence of oil which is capable of being produced is insufficient to support an extension of the leasehold under this type of lease, unless that oil has, in fact, been produced"). "The term 'paying quantities,' when used in the habendum clause of an oil and gas lease, has been construed by the weight of authority to mean 'quantities of oil or gas sufficient to yield a profit, even small, to the lessee over operating expenses, even though the drilling costs,

or equipping costs, are not recovered, and even though the undertaking as a whole may thus result in a loss.' " *Blausey*, 61 Ohio St.2d at 266, 400 N.E.2d 408, quoting Annotation, 43 A.L.R.3d 8, 25 (1972); *see also Gardner v. Oxford Oil Co.*, 2013-Ohio-5885, 7 N.E.3d 510, ¶ 37 (7th Dist.).

**{¶25}** An oil and gas lease containing a habendum clause that states the lease shall remain in effect as long as oil or gas is produced in paying quantities automatically expires when no oil or gas is produced for two years or more:

> "Courts universally recognize the proposition that a mere temporary cessation in the production of a gas or oil well will not terminate the lease under a habendum clause of an oil and gas lease where the owner of the lease exercises reasonable diligence and good faith in attempting to resume production of the well. A critical factor in determining the reasonableness of the operator's conduct is the length of time the well is out of production. * * *
>
> A review of the reported cases reflects that while courts tend to hold the cessation of production temporary when the time periods are short, lessees have, for the most part, been held not to have proceeded diligently when the cessation from production exists for two years or more."

*Lauer v. Positron Energy Resources, Inc.*, 4th Dist. Wash. No. 13CA39, 2014-Ohio-4850, ¶ 12, quoting *Wagner v. Smith*, 8 Ohio App.3d 90, 92–94, 456 N.E.2d 523 (4 Dist. 1982); *see also Casto v. Positron Energy Resources, Inc.*, 4th Dist. Washington No. 14CA39, 2016-Ohio-285, ¶ 16.

**{¶26}** According to Gas Enterprises's own records—the forms it issued to ODNR and the county auditor's office—it affirmatively reported that no oil or gas was produced from the wells on the landowners' property in 2006, 2007, 2008, 2012, and 2013. Therefore, in its own filings, Gas Enterprises acknowledged that the wells had ceased production for two periods of at least two years—2006-2008 and 2012-2013. Based on

this evidence, the trial court correctly concluded that the oil and gas lease expired by its own terms because no oil or gas had been found, i.e., produced in paying quantities.

**{¶27}** Nonetheless, Gas Enterprises argues that the affidavits of its manager, Williams, and Triad Hunter's landman, Barnhouse, raised genuine issues of material fact about whether the wells produced oil in paying quantities, thereby precluding summary judgment. We disagree. Williams's affidavits conceded that Gas Enterprises did not report any production of oil or gas from 2006-2008 and 2012-2013, but claimed that the company bookkeeper did not report production because there were no sales. He did not, however, ever specifically state in his affidavits that there was any production in paying quantities during those years; instead, he only stated in vague, conclusory terms that the wells produce oil on a slow, but consistent basis, that year-by-year production figures cannot be easily obtained, and that the company bookkeeper may have erroneously reported no production for the relevant years. These statements are insufficient to establish a genuine issue of material fact. *See Wheatley v. Marietta College*, 4th Dist. Washington No. 14CA18, 2016-Ohio-949, ¶ 45 (mere speculation and unsupported conclusory assertions are not sufficient to meet the nonmovant's reciprocal burden to set forth specific facts to show that a genuine issue exists).

**{¶28}** In claiming that mere reporting errors do not establish the lack of production, Gas Enterprises cites *Mobberly v. Wade*, 2015-Ohio-5287, 44 N.E.3d 313, ¶ 12 (7th Dist.), where the court rejected a lessor's argument that a lessee's failure to send production reports to ODNR as required by law was evidence of a lack of production. This case is inapposite because Gas Enterprises did not merely fail to send production reports to ODNR; instead, Gas Enterprises *affirmatively reported* to both

ODNR and the county auditor that the wells on the pertinent property did not produce any oil or gas in 2006-2008 and 2012-2013. And unlike the lessee in *Mobberly*, Gas Enterprises did not introduce production reports listing the number of barrels of oil sold and the allocation of corresponding royalties and deposition testimony detailing the production of oil. *Id.* at ¶ 17.

{¶29} Williams's statement in his second affidavit that he believed that Gas Enterprises showed a profit in all years from 2006 to the present is likewise conclusory and immaterial. Williams merely stated that *the company as a whole* showed a profit; he did not specify that the profit came from the production of oil or gas from wells on the landowners' property.

{¶30} Similarly, Triad Hunter employee Barnhouse's affidavit, stating that the company's due-diligence review of the lease determined that the wells were prudently operated to provide sufficient and paying quantities, is conclusory and insufficient. In fact, Barnhouse claims that the Triad Hunter review consisted of an examination of Gas Enterprises's production history for the wells. But the only existing production documents in the record are those provided by Gas Enterprises in discovery—the documents it issued to ODNR and the county auditor reporting no production of oil or gas in 2006-2008 and 2012-2013.

{¶31} Because the affidavits were vague, conclusory, and immaterial, they did not satisfy Gas Enterprises's reciprocal burden under Civ.R. 56(E) to set forth specific facts to show that a genuine issue of material fact existed for trial. The trial court correctly held that the oil and gas lease expired by its own terms when no oil or gas was produced during 2006-2008 ad 2012-2013.

B. Statute of Limitations

**{¶32}** Next, Gas Enterprises argues that the landowners' declaratory-judgment claim was barred by the four-year statute of limitations in R.C. 2305.041, which provides:

> With respect to a lease or license by which a right is granted to operate or to sink or drill wells on land in this state for natural gas or petroleum and that is recorded in accordance with section 5301.09 of the Revised Code, an action alleging breach of any express or implied provision of the lease or license concerning the calculation or payment of royalties shall be brought within the time period that is specified in section 1302.98 of the Revised Code. An action alleging a breach with respect to any other issue that the lease or license involves shall be brought within the time period specified in section 2305.06 of the Revised Code.

**{¶33}** R.C. 1302.98 provides a four-year statute of limitations for the breach of any contract for sale, and R.C. 2305.06 provides an eight-year statute of limitations for an action upon a contract or promise in writing.

**{¶34}** Gas Enterprises's argument is meritless for several reasons. First, assuming arguendo that the four-year statute of limitations in R.C. 2305.041 and 1302.98 applies, the landowners' action in early 2014 was filed within four years of the 2012-2013 period that no oil or gas was found in paying quantities from the wells Gas Enterprises operated.

**{¶35}** Second, the four-year statute of limitations of R.C. 2305.041 and 1302.98 is inapplicable because the landowners' declaratory-judgment claim was not based on the "breach of any express or implied provision of the lease or license concerning the calculation or payment of royalties." In fact, the claim was not based on the breach of the oil and gas lease at all; it instead sought a declaration that the lease had terminated as a matter of law based on its express language.

**{¶36}** Third, as we recently held in *Schultheiss v. Heinrich Enterprises, Inc.*, 2016-Ohio-121, __ N.E.3d __, ¶ 23-26 (4th Dist.), and the subsequent entry denying in part an application for reconsideration in that case, *Schultheiss v. Heinrich Enterprises, Inc.*, 4th Dist. No. 15CA20 (Mar. 11, 2016), the equitable defenses raised by Gas Enterprises do not apply when an oil and gas lease has expired in accordance with its own express provisions. Therefore, the statute of limitations did not bar the landowners' declaratory-judgment claim.

C. Equitable Issues and Public Policy

**{¶37}** Finally, Gas Enterprises asserts that the trial court erred in granting a forfeiture of the oil and gas lease because it failed to take into account the equities and public policy.

**{¶38}** We reject this contention because this case involves the expiration of an oil and gas lease and accompanying automatic and self-executing reversion of rights to the lessor based on the express terms of the lease, rather than a lease that is forfeited based on the breach of an implied contractual duty. In these cases, the trial court should not weigh the equitable considerations to determine if forfeiture is the appropriate remedy because under the express terms of the lease the parties, in essence, contractually agreed that it is. *See, e.g., Sims v. Anderson*, 2015-Ohio-2727, 38 N.E.3d 1123, ¶ 14-16. And although their first claim broadly referred to "forfeiture," it included the allegation that the four wells on the property had not had sufficient production to hold the lease, assignment, and sublease, and that they consequently "expired by their own terms." Similarly, the landowners argued in their motion for

summary judgment that the lease expired on its own terms and revested the leased estate in them.

**{¶39}** Consequently, in the absence of a provision in the lease requiring notice to the lessees, the trial court was not required to address any purported failure of the landowners to complain to Gas Enterprises about the lack of production of oil or gas in paying quantities. Because the lease expired automatically and as a matter of law by its own terms when Gas Enterprises failed to produce oil or gas in paying quantities for two different periods of at least two years (2006-2008 and 2012-2013), " 'no affirmative action' " on the part of the landowners was " 'required to formally terminate the lease.' " *Casto*, 2016-Ohio-285, at ¶ 21, quoting *Tisdale v. Walla*, 11th Dist. Ashtabula No. 94-A-0008, 1994 WL 738744, *4 (Dec. 23, 1994); *Am. Energy Servs. v. Lekan*, 75 Ohio App.3d 205, 212, 598 N.E.2d 1315 (5th Dist.1992) ("If after the expiration of the primary term the conditions of the secondary term are not continuing to be met, the lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor"); *see also* 3-6 Williams & Meyers, *Oil and Gas Law*, Section 604.7 (2014) (footnotes omitted) ("No cases have been found in which the court has found that the doctrine of laches is a defense to the lessor's claim that a lease has terminated pursuant to the special limitation in the habendum clause"); *see also Schultheiss*, 2016-Ohio-121, __ N.E.3d __, at ¶ 23-27. No notice was required before the landowners filed their claim for declaratory relief. *See Casto* at ¶ 22 ("Because the lease required no affirmative action on Casto's part, the notice provision permitting an opportunity to cure a default is inapplicable"). If a lessee desires a notice and an opportunity to cure, the lessee should include those terms in the lease it drafts.

**{¶40}** Nor—as contended by Gas Enterprises—did the trial court need to address the payment or acceptance of royalties. Assuming that the landowners accepted royalty payments after the oil and gas lease had terminated, because the acceptance of these payments was not inconsistent with their legal claim, they were not estopped from seeking a declaration that the lease had terminated. As owners of the land they were entitled to at least the royalties, no matter what the outcome in the case. *See Sims*, 2015-Ohio-2727, at ¶ 24-28, citing *Bonner Farms, Ltd. v. Fritz*, 355 Fed.Appx. 10, 15 (6th Cir.2009). And the summary-judgment evidence did not indicate that the landowners received any royalty payments in the years in which no oil or gas was found or produced in paying quantities here—2006-2008 and 2012-2013.

**{¶41}** Likewise, the trial court did not need to determine whether there was an adequate remedy at law. The parties' oil and gas lease specified the remedy—the expiration of the lease and reversion of the interest to the landowners when no oil or gas was found or produced in paying quantities in 2006-2008 and 2012-2013. No weighing of equitable considerations was necessary. *Sims* at ¶ 16.

**{¶42}** Finally, Gas Enterprises's policy arguments are meritless. Under well-established contract law, contracts entered into freely and fairly are valid and will be enforced by courts. *See generally Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447. 974 N.E.2d 78, ¶ 15. "The freedom to contract is a deep-seated right that is given deference by the courts." *Id.* Gas Enterprises does not assert or even suggest that the lease was not entered into freely and fairly or claim that a specific public-policy exception exists that would allow us to ignore the explicit

provisions of the contract. Instead, its policy arguments are based on its interpretation of the applicable law and evidence that we have rejected.

**{¶43}** Therefore, summary judgment was properly entered in favor of the landowners based on the express language of the parties' oil and gas lease. Because our role is to enforce valid contract as written, rather than to apply equity in attempting to avoid the consequences of its application, we overrule Gas Enterprises's sole assignment of error. *See Boone Coleman Construction, Inc. v. Piketon*, __Ohio St.3d__. 2016-Ohio-628, __N.E.3d__, ¶ 39.

## V. CONCLUSION

**{¶44}** The trial court properly entered summary judgment in favor of the landowners by declaring that the oil and gas lease was void because oil or gas had not been found in paying quantities in the wells on the property necessary for the lease to remain in effect. Having overruled Gas Enterprises's sole assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur In Judgment and Opinion.


For the Court


BY:  _____
     William H. Harsha, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**