[Cite as *Mobberly v. Wade*, 2015-Ohio-5287.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARSH E. MOBBERLY | ) | CASE NO. 13 MO 18 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| WILL WADE | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Monroe County, Ohio Case No. 2012-452

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellant: Atty. Richard L. Ross
1800 Pleasant Valley Road
Malta, Ohio 43754-9646

For Defendant-Appellee: Atty. James S. Huggins
Atty. Daniel P. Corcoran
Atty. Kristopher O. Justice
Theisen Brock, L.P.A.
424 Second Street
Marietta, Ohio 45750

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: December 11, 2015

[Cite as *Mobberly v. Wade*, 2015-Ohio-5287.]
WAITE, J.

{¶1} In this action regarding an oil and gas lease, Appellant Marsh E. Mobberly appeals a September 12, 2013 Monroe County Common Pleas Court decision granting summary judgment to Appellee Will Wade. The dispute centers around whether Appellee abided by the terms of the lease. Appellant contends the trial court erred in determining that his wells were producing and that Appellee did not violate the lease in regard to the sale of the oil and gas. Appellant additionally raises for the first time an argument regarding the implied covenants of development and marketing.

{¶2} Despite Appellant's contentions, this record supports the trial court's decision. Appellant's unpreserved arguments are waived. Accordingly, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶3} Appellant owns 35 acres of land in Franklin Township, Monroe County. Before he obtained the property, his predecessors in title entered into an oil and gas lease with William E. and Bertha L. Gerber on February 27, 1928. In 1974, the Gerbers assigned a partial interest of their right to drill on Appellant's land to Appellee, a small oil and gas producer in Monroe County. In 1993, the Gerbers assigned the remaining rights in the lease to Appellee. This resulted in Appellee owning all rights, title, and interest in the lease.

{¶4} Shortly thereafter, Appellee drilled two wells on Appellant's land which produced, and continue to produce, both oil and gas. Appellee then entered into a collection agreement with Ergon Oil ("Ergon"). Periodically, Ergon utilized Ohio Oil

Gathering to pick up the oil produced from Appellant's land and transport the oil to Ergon's facility. Before the oil is picked up, it is stored in tanks that are located on Appellant's land. Appellee measures the oil regularly to determine when enough oil has been produced in order to call for collection. When Ohio Oil Gathering arrives, it measures the oil in the tank before taking it to Ergon. Once the oil arrives at Ergon, an official measurement takes place and the royalties are paid based on that measurement. Appellant admittedly received several royalty payments from Ergon, but has not cashed these checks because it is his belief that the oil sold to Ergon was not really produced on his property.

{¶5} Appellant's belief formed when he learned that certain oil produced from his wells had been comingled with oil produced from a neighbor's property. Appellee admits that the oil was comingled, but claims that commingling only occurred on one occasion when it was necessary to replace a leaky oil storage tank. In the meantime, a second dispute arose between the parties regarding the production of gas. Appellee has been purchasing the gas produced from Appellant's land for his own personal use. Appellee paid Appellant what he considered a reasonable price for the gas and also paid Appellant the royalties in accordance with the lease. Despite payment, Appellant became upset that Appellee was purchasing the gas, because Appellant contends that Appellee had a duty to market the gas. A third dispute arose when Appellant learned that Appellee had not been filing production reports with the Ohio Department of Natural Resources ("ODNR"), as required by law.

**{¶6}** As a result, Appellant filed an action to quiet title, a declaratory judgment action, and a complaint alleging fraud, interference with a prospective contractual relationship, and intentional tort. Appellant sought to have the contract declared at an end and prevent Appellee from extending the lease for another term. Shortly after the complaint was filed, both parties filed motions for summary judgment. On September 12, 2013, the trial court granted Appellee's motion for partial summary judgment and denied Appellant's motion. The trial court dismissed the action to quiet title, the action seeking declaratory judgment, and all counts of Appellant's complaint. Appellant has filed this timely appeal. On appeal he addresses only the action to quiet title and the declaratory judgment.

## Assignment of Error No. 1

The trial court erred in granting Appellee's motion for partial summary judgment.

## Assignment of Error No. 2

The trial court erred in not granting Appellant's motion for summary judgment to quiet title to Appellant.

### *Summary Judgment*

**{¶7}** When reviewing a trial court's decision to grant summary judgment, an appellate court conducts a *de novo* review using the same standards as the trial court, in accordance with Civ.R. 56(C). *Campbell Oil Co. v. Shepperson,* 7th Dist. No. 05 CA 817, 2006-Ohio-1763, ¶8, citing *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶8}** When moving for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and *identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim*." (Emphasis sic.) *Campbell Oil Co.*, ¶9, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). In response, the non-moving party must set forth specific facts showing that there is a genuine issue of fact for trial and that a reasonable factfinder could rule in that party's favor. *Bentley v. Beck Energy Corp.,* 7th Dist. Nos. 13BE33, 13BE44, 2015-Ohio-1375, ¶13, citing *Campbell Oil Co.* at ¶9; *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023, (1997).

**{¶9}** The court must look at all facts in the light most favorable to the non-moving party and find that: "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party." *Campbell Oil Co.* at ¶8*,* citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶10}** Appellant presents several arguments that are more easily understood when grouped into three categories: production of oil, production of gas, and implied covenants. Appellant's arguments will be addressed within these categories.

*Production of Oil*

{¶11} Appellant contends that there is no evidence to show that the oil sold to Ergon was produced from his land. Appellant centers this contention by raising Appellee's admission that he comingled oil produced from the two wells on his land with oil that originated from a neighboring property. Additionally, Appellant asserts that Appellee failed to file production reports with ODNR, which is required by law. Based on this, Appellant claims that Appellee has not shown that the oil came from his property and that Appellee has thus obtained an unlimited right to determine his own performance, making the contract illusory. Appellant argues that the lease should be invalidated and voided due to Appellee's failures. Appellant also claims that the lease should not be extended because Appellee cannot show that the leasehold is still producing.

{¶12} In response, Appellee explains that the lease contains a two-tiered habendum clause which allows the production of oil and gas beyond the primary term and into the secondary term so long as certain requirements are met. Consequently, Appellee asserts that the lease expires only in the event that he stops production or fails to pay Appellant the rental fees. Appellee points out that both wells on Appellant's land have been producing, as evidenced by the significant royalty payments, the production documents, and his uncontested testimony. As to the lack of production reports sent to ODNR, Appellee argues that these reports are not evidence of production or the lack of production; rather, they tend to show only his failure to comply with an ODNR administrative requirement.

{¶13} Appellee disputes Appellant's contention that moving or comingling oil between tanks on one occasion results in a violation of the lease agreement. Appellee explains that comingling of oil occurred on only one occasion and was required because he was informed by ODNR that Appellant's oil storage tank was leaking and needed to be replaced. According to Appellee, all oil in the tank must be removed before the tank can be replaced. Appellee explains that he measured the oil in both Appellant's tank and the neighboring property's tank before mixing the oil, and allocated the royalties in accordance with these measurements. Appellee explained this process in his deposition testimony and provided several documents in support.

{¶14} Appellee argues that his failure to send production reports to ODNR is not proof that the land is not producing. This failure on his part is irrelevant to the issue of production and simply shows that he was lax in following ODNR's administrative requirements. He argues that even if oil was not being produced, he was performing substantial operations on the leasehold. Hence, the requirements for extending the lease into the secondary term have been met.

{¶15} In order to address these arguments, we must first examine the evidence submitted to the trial court in summary judgment. Appellee submitted production records, which included receipts and production reports. The receipts showed the date the oil was picked up, the tank number the oil was taken from, and the amount of oil removed from the tank. The production reports listed the number of barrels of oil sold and Appellant's allocation of the corresponding royalties. The

production reports accompanied the royalty checks that Appellant admittedly received.

{¶16} Appellant contends that Appellee's failure to send production reports to ODNR as required by law is evidence of a lack of production. Appellant is mistaken. Whether or not Appellee sent ODNR production reports is not a relevant issue in this matter. To prevail, Appellee need only produce evidence that oil was produced, not that he filed the requisite production records to ODNR. The production records submitted by Appellee clearly demonstrate that oil has been produced. However, the question remains whether the evidence shows that this oil came from Appellant's property.

{¶17} Relevant to this question, Appellee attached both his deposition and an affidavit to his motion for summary judgment to explain where the oil was taken from and how it was removed. In his deposition, Appellee testified that oil produced from Appellant's land was comingled with oil from neighboring land on only one occasion. On this occasion, ODNR informed Appellee that one of the tanks was leaking and needed to be replaced. According to Appellee's affidavit, that tank exclusively held oil from Appellant's land. Before the tank could be replaced, the oil it contained had to be removed from the tank. Appellee testified that he measured the oil in the tank and determined that the tank contained approximately 50 barrels of oil. According to the agreement with Ergon, if the total amount of oil taken from the tank was less than 60 barrels, $3.50 per gallon would be deducted. Also, the price of oil was on the low end that month. In an attempt to avoid a loss and obtain the best price, which would

affect Appellant's royalties, Appellee measured the oil in another neighboring tank and dumped Appellant's oil into that tank. When this commingled oil was picked up and sold to Ergon, Appellee distributed the royalties to Appellant and his neighbor based on his measurements. Appellant failed to produce any evidence to dispute Appellee's testimony.

{¶18} While no Ohio courts appear to have addressed comingling of oil between neighboring lands, other jurisdictions have ruled on the issue. For instance, the Texas Supreme Court has held that generally, "[w]here the mixture is homogeneous, the goods being similar in nature and value, and if the portion of each may be properly shown, each party may claim his aliquot share of the mass." *Humble Oil Ref. Co. v. West,* 508 S.W.2d 812, 818 (Tex.1974). The Supreme Court of New Mexico reached a similar holding in *Page v. Jones,* 1920-NMSC-039, ¶8, 26 N.M 195, 190 P. 541.

{¶19} Based on the guidance provided by these cases, we find that the good (the oil from each respective property), was similar in nature and value and it was possible to determine each parties' share of the mass. Thus, Appellee has provided evidence to demonstrate how much of the oil sold to Ergon came from Appellant's land. As we find that Appellant's land has been producing oil, we need not address Appellee's argument that the lease is extended into the secondary term based on his substantial operations. Accordingly, Appellant's argument is without merit and is overruled.

*Sale of Gas*

**{¶20}** Appellant concedes that gas has been produced from his land but contends that Appellee has violated the terms of the lease by selling the gas to himself instead of marketing it. Appellee responds by arguing that selling the gas to himself does not violate any lease provision. Further, he argues that he has paid a reasonable amount for the gas and has paid Appellant the royalties as per the lease. Even so, the lease requires only production of oil *or* gas, and as it is clear that oil is being produced, this issue is irrelevant.

**{¶21}** The record reflects that Appellee has been purchasing Appellant's gas and paying for both his use of the gas and the corresponding royalties. Despite Appellant's assertion, the lease does not contain any provision that prohibits Appellee from selling the gas to himself. Although Appellant claims that Appellee is responsible for producing and selling the gas in "commercial production," there is no such requirement within the lease. The only requirement as to the production of gas is that Appellee must pay Appellant 1/8 of the produced gas in royalties, which Appellee has clearly done.

**{¶22}** Regardless, so long as oil is produced from the land, Appellee is not obligated to show that gas is being produced at all. This is evident from the habendum clause, which states in relevant part that the "lease shall remain in force for a term of five years from this date and [so] long thereafter as *oil or gas, or either of them is produced.*" (2/27/28 Lease.) According to the plain language of this provision, Appellee is only required to produce one of the two commodities. As Appellee clearly proved the land produced oil, this is sufficient to extend the lease

into the secondary term.  Further, as the lease does not prohibit Appellee from selling the gas to himself, he has not violated any express terms of the lease.  Accordingly, Appellant's arguments are without merit and are overruled.

*Implied Covenant*

**{¶23}** As Appellant believes that Appellee has not been producing oil from his land, he argues that the implied covenant of development has been breached.  He also argues that Appellee's purchase of the gas rather than his marketing it to a third party breaches an implied covenant of marketing.

**{¶24}** In response, Appellee contends that any issues pertaining to these implied covenants were not raised in the trial court and are waived.  Even if they could be considered the land is producing oil, so the implied covenant of development has not been breached.  Also, Appellee points out that there is no lease provision that prohibits him from purchasing the gas so long as he pays the requisite royalties, thus any implied covenant of marketing has not been breached.

**{¶25}** Appellant failed to raise these issues to the trial court.  "[I]ssues not raised in the trial court may not be raised for the first time on appeal."  *Mauersberger v. Marietta Coal Co.,* 7th Dist. No. 12 BE 41, 2014-Ohio-21, ¶17, citing *State v. Abney,* 12th Dist. No. CA2004-02-018, 2005-Ohio-146, ¶17.  As these issues were not timely raised in the trial court and the record does not contain support for these arguments, they are waived.

Conclusion

**{¶26}** Appellant contests the trial court's decision to grant summary judgment in favor of Appellee as he believes that Appellee has not shown that oil was produced from his land and because he has been purchasing the gas produced for his own use rather than marketing it, as he claims is required by the lease. Appellee produced evidence to demonstrate that Appellant's land has been and continues to produce oil. Appellee has failed to present any evidence to rebut this evidence. Thus, reasonable minds can come to only one conclusion and that conclusion favors Appellee. Accordingly, the trial court properly granted summary judgment in favor of Appellee. Appellant failed to raise any issues pertaining to implied covenants of development and marketing, thus these issues are waived. Accordingly, the judgment of the trial court is affirmed in full.

DeGenaro, J., concurs.

Robb, J., concurs.