[Cite as *Burkhart v. Miley*, 2017-Ohio-9006.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CYRIL AND ROSEMARY BURKHART, | ) | |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | CASE NOS. 15 MO 0012 |
| V. | ) | 15 MO 0013 |
| | ) | 15 MO 0014 |
| JEFF MILEY DBA MILEY GAS CO., ET AL., | ) | |
| | ) | OPINION |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas of Monroe County, Ohio Case No. 2013-293

JUDGMENT:     Reversed
Judgment in favor of appellants.

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: December 8, 2017

APPEARANCES:

| | |
|---|---|
| For Plaintiffs-Appellees<br>Cyril and Rosemary Burkhart | Attorney Ethan Vessels<br>309 Second Street<br>Marietta, Ohio 45750 |
| For Defendants-Appellants<br>Jeff Miley dba Miley Gas Co. | Attorney William Taylor<br>Attorney Scott Eickelberger<br>Attorney David Tarbert<br>Attorney Ryan Linn<br>50 North Fourth Street<br>P.O. Box 1030<br>Zanesville, Ohio 43702-1030 |
| For Defendant-Appellant<br>Antero Resources | Attorney Lyle Brown<br>Attorney Melanie Morgan-Norris<br>Attorney J. West<br>41 South High Street<br>Columbus, Ohio 43215 |
| For Amicus Curiae<br>Ohio Oil and Gas Association | Attorney Gregory Russel<br>Attorney Peter Lusenhop<br>52 East Gay Street<br>Columbus, Ohio 43216-1008 |
| | Attorney Aaron Williams<br>200 Public Square, Suite 1400<br>Cleveland, Ohio 44114 |

DONOFRIO, J.

{¶1} Defendant-appellant, Antero Resources Corporation, along with defendant-appellant, Jeff Miley d.b.a. Miley Gas Company, appeal from a Monroe County Common Pleas Court judgment, resulting from a bench trial, finding that a certain oil and gas lease terminated due to the failure of the well at issue to produce in paying quantities.

{¶2} Plaintiff-appellee, Rosemary Burkhart, individually and as the representative of the estate of Cyril Burkhart, is the owner of the mineral rights to a 66-acre parcel of property located in Seneca Township in Monroe County (the Property).

{¶3} By deed recorded February 2, 1945, Aloysius and Celia Burkhart, as lessors, executed an oil and gas lease with Burns Drilling Company, as lessee (the Lease). Aloysius and Celia were Cyril Burkhart's parents. Aloysius's and Celia's mineral interest passed to Cyril. When Cyril passed away, his mineral interest passed to Rosemary.

{¶4} The Lease provides that it is for a term of five years and "so much longer thereafter as oil, gas or their constituents are in paying quantities thereon."

{¶5} The Lease covers the entire property. A single well sits on the property (the Well). The Well was drilled in 1945. In 1992, the Burkharts transferred ownership of the Property's surface rights to Leo and Judith Loraditch. The Burkharts reserved the mineral rights to the Property.

{¶6} On October 11, 2011, the Burkharts recorded a Preservation Notice of Ownership in Oil and Gas Rights for the purpose of preserving their reserved mineral interest.

{¶7} In 2011, defendant-appellant, Jeff Miley d.b.a. Miley Gas Company (Miley), purchased the Well from RMB Production Corporation. The Lease was also assigned to Miley. The assignment of the Lease from RMB to Miley was recorded April 12, 2011. In 2012, Miley assigned the deep rights of the Lease to defendant-appellant, Antero Resources Corporation (Antero).

{¶8} On July 26, 2013, Burkhart filed a complaint against Miley. The

complaint alleged that the primary term of the Lease expired on December 6, 1949, and there has not been sufficient production to continue the Lease. Therefore, Burkhart sought a declaration that the Lease expired under its own terms. She later amended the complaint to add Antero as a defendant.

**{¶9}** The case proceeded to a bench trial on October 1, 2014. The trial court found that Miley had operated the Well in good faith and that it was profitable. The court found that Miley had declared a profit from its operation of the Well on tax returns in 2011, 2012, and 2013.

**{¶10}** The trial court found there was confusion regarding the name and API number of the Well stemming from a sign hanging on the wellhead identifying the Well as the "Burkhart, No.: 1Permit; Unknown." and the Form 7 (Request for Change of Owner), which identified the Well as the "Burkhart No. 2 API 20368." The court went on to find that the evidence demonstrated the Well located on the Property is actually the Well designated as API No. 20368. It found that the argument that Miley had been using the production from a well located off of the Property (No. 20334) to hold the Lease was not supported by the evidence. The court found that the Ohio Department of Natural Resources (ODNR) records placed Well No. 20334 in a location that did not match the legal description of the Property. Moreover, the court found that the drilling of Well No. 20334 was completed prior to the execution of the Lease and the ODNR described this well as a non-producing historic well. On the other hand, the court found that Well No. 20368 is located in the southwest quarter of section 4, in which a portion of the Property is also located. And ODNR records reflected that Well No. 20368 was drilled approximately one month after the execution of the Lease.

**{¶11}** Thus, the court found that the production from Well No. 20368 located on the Property was continuous and profitable. Therefore the court found that the Lease remained in full force because the Well was producing in paying quantities. The court entered judgment in favor of Miley and Antero.

**{¶12}** Following the judgment in favor Miley and Antero, Burkhart filed a

motion for new trial or to amend the court's findings of fact and conclusions of law. Burkhart alleged that Jeff Miley made knowing misrepresentations to the court during the trial. In the motion, Burkhart did not take issue with the court's finding that the Well was located on the Property. But Burkhart argued that the court's finding that Miley made a profit from 2011-2013 was incorrect. She noted that Jeff Miley and his wife Meleesa both testified that they declared a profit in those years. But Burkhart stated that Miley actually declared a loss in 2012 and 2013. She stated that she obtained this information by way of a motion to compel in another case where Miley produced his tax records. She further asserted that Miley's tax records reported money spent for contract labor, repairs, and maintenance, contrary to his testimony that he did his own repairs.

{¶13} The trial court found that Burkhart presented good cause to reopen its previous judgment and take additional testimony on the issue of Miley's tax returns.

{¶14} The court held a hearing where it took additional testimony and evidence on the sole issue of whether Miley had been profitably producing oil or gas from the Well under the Lease.

{¶15} The court found that at the initial trial, Jeff Miley had testified for the relevant tax years of 2010-2013, Miley was profitable and did not declare a loss. But the court found Miley's tax records showed otherwise. It noted that Miley declared a loss in 2012 and 2013. Additionally, it found that the tax returns demonstrated that much of Miley's gross revenue did not come from the sale of oil and gas but from contract work that Jeff Miley performed for other oil and gas operators. The court went on to find that Miley did not report any production for 2011-2103 until late 2013, when Antero suggested that Miley submit its production to the ODNR. Based on this disclosure, the court inferred that the 2011 and 2012 production numbers were merely estimates. The court noted it was undisputed by Jeff Miley that it would be virtually impossible for any third party to look at documentary evidence and independently verify that the Well is profitable. The court also noted, however, that Miley's tax preparer testified that the Schedule C forms for 2012 and 2013, did not

show the expenses associated with the production of oil and gas exceeded the revenues from the sale of oil and gas.

**{¶16}** The trial court found that Miley has a major financial incentive to claim that the Well is profitable. It further found significant that Miley did not report any production for the years 2011 and 2012, until directed by Antero do to so in late 2013. Finally, the court found that a lessee who claims his lease is profitable yet whose tax return shows a loss casts "real doubt" on the actual profitability. Based on these findings, the trial court found the Lease was cancelled for lack of production. Therefore, the court vacated its previous judgment and entered judgment in favor of Burkhart.

**{¶17}** Antero subsequently filed a motion for new trial and to reopen and amend the judgment entry.

**{¶18}** Miley filed a timely notice of appeal on June 26, 2015 (15-MO-12). Miley then filed a motion joining in Antero's motion for new trial.

**{¶19}** Antero then filed a notice of appeal (15-MO-13). The trial court, without leave, denied the motion for a new trial. Antero filed another notice of appeal from that judgment (15-MO-14).

**{¶20}** This court then issued a limited remand so that the trial court could rule on the motion for new trial. The trial court denied the motion. This court then consolidated the appeals. This court also granted the Ohio Oil and Gas Association and the Southeastern Ohio Oil and Gas Association leave to file an amicus curiae brief in support of Antero and Miley.

**{¶21}** Antero raises five assignments of error. Miley raises three assignments of error. We will address the assignments of error out of order for ease of discussion.

**{¶22}** Antero's second assignment of error and Miley's second assignment of error control the outcome of this case.

**{¶23}** Antero's second assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT
DID NOT USE THE CORRECT LEGAL STANDARD AND BURDEN OF

PROOF IN DETERMINING IF THERE WAS PRODUCTION IN PAYING QUANTITIES.

**{¶24}** Miley's second assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN APPLYING THE WRONG LEGAL STANDARD IN DETERMINING WHETHER AN OIL AND GAS LEASE REMAINS IN EFFECT.

**{¶25}** Here Antero argues the trial court erred in focusing on the overall profitability of the Lease's total operation instead of on the profitability of the Well and in shifting the burden of proof to appellants to prove production in paying quantities. Antero points out that the law defers to the lessee's determination as to the profitability of a well. It asserts paying quantities refers to a "well" as opposed to a "lease." Antero goes on to argue that the cost of the lessee's own labor in operating and maintaining a well is not considered when determining paying quantities.

**{¶26}** Antero contends the trial court was correct in its First Decision when it limited its focus to the profitability of the Well and concluded there was production in paying quantities. It asserts the court erred in its Second Decision when it focused instead on the overall profitability of Miley's operations as opposed to the profitability of the Well.

**{¶27}** Additionally, Antero argues the trial court impermissibly shifted the burden from the Burkharts (to prove lack of paying quantities) to them (to prove paying quantities).

**{¶28}** Miley adds that the Lease provides that it will continue so long as oil and gas are produced in paying quantities, not so long as the lessee declares a profit on its Schedule C with the IRS. It further points to testimony that these payments are consistent with the royalties paid to the Burkharts. Finally, it points to Jeff Miley's testimony that the Well is profitable and his expenses for the Well are de minimis.

**{¶29}** After the primary term of an oil and gas lease expires, if the conditions

of the secondary term are not being met, then the lease terminates by the express terms of the contract and by operation of law and revests the leased estate in the lessor. *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.), ¶ 63. It is common for the secondary term of the lease to be conditioned upon oil or gas being produced in paying quantities. *Dennison Bridge, Inc. v. Resource Energy, L.L.C.*, 7th Dist. No. 14 HA 21, 2015-Ohio-4736, ¶ 21.

{¶30} The term "paying quantities," when used in the habendum clause of an oil and gas lease, generally means quantities of oil or gas sufficient to yield even a small profit to the lessee over operating expenses, even though such things as drilling costs or equipping costs are not recovered which may result in the undertaking as a whole suffering a loss. *Blausey v. Stein*, 61 Ohio St.2d 264, 265-266, 400 N.E.2d 408 (1980).

{¶31} In determining whether a well is profitable, courts look to the discretion of the lessee. *Lang v. Weiss Drilling Co.*, 7th Dist. Nos. 15 MO 0005, 15 MO 0006, 2016-Ohio-8213, ¶ 34. Although the lessee has discretion to determine a well's profitability, the determination of whether a well is profitable cannot be arbitrary. *Id.* Courts impose a standard of good faith on the lessee. *Id.*

{¶32} This case is controlled by another decision of this court involving The Burkhart Family Trust and Antero. *Burkhart Family Trust v. Antero Resources Corp.*, 7th Dist. Nos. 14 MO 0019, 14 MO 0020, 2016-Ohio-4817, appeal not allowed, 147 Ohio St.3d 1437, 2016-Ohio-7677, 63 N.E.3d 156.

{¶33} In that case, the Burkhart Family Trust (BFT) filed a complaint against Antero and Tri-County seeking a declaratory judgment that a certain lease had been forfeited for lack of production in paying quantities. The matter proceeded to a bench trial and the trial court entered judgment in favor of BFT. Antero and Tri-County appealed to this court. They argued that the trial court improperly placed the burden of proof on them at trial to prove that the wells in question were producing in paying quantities. *Id.* at ¶ 10. Instead, they asserted, because BFT brought the complaint against them, the trial court should have placed the burden on BFT to prove that the

wells were not producing in paying quantities. *Id.*

**{¶34}** This court started out by noting that although the case involved an oil and gas lease, its resolution depended on the Rules of Civil Procedure, specifically who held the burden of proof. *Id.* at ¶ 12. We found that although the trial court never directly stated which party bore the burden of proof, it was clear from the record that the court improperly shifted the burden to Antero and Tri-County. *Id.* For example, we pointed to the trial court's finding that Sulsberger, Tri-County's owner, had presented "no credible evidence to support his blanket assertion" that the wells were profitable. *Id.* We further pointed to the trial court's finding that Sulsberger did not keep a business ledger, bookkeeping software, or list of the income versus expenses for his company. *Id.*

**{¶35}** We went on to address Sulsberger's testimony. We noted that Sulsberger was BFT's sole witness. *Id.* at ¶ 15. Sulsberger testified that the wells were producing in paying quantities. *Id.* The trial court found Sulsberger's testimony to be not credible. *Id.* We found that while the trial court disbelieved Sulsberger, this did not lead to the conclusion that Sulsberger's testimony was evidence of the opposite, that being that the wells were not producing in paying quantities. *Id.* Instead, it left BFT with no credible witness. *Id.*

**{¶36}** We then addressed the trial court's finding that the wells were not producing in paying quantities. We noted that only some of the trial court's findings were relevant to whether the wells produced in paying quantities and those relevant findings were not supported by the record. *Id.* at ¶ 21.

**{¶37}** First, we pointed to the trial court's finding that Sulsberger had miscalculated the royalties paid to BFT. *Id.* at ¶ 22. We found that any miscalculation of royalties was irrelevant to the question of paying quantities. *Id.* Thus, we found the trial court improperly considered this factor.

**{¶38}** Second, we pointed to the trial court's finding that Sulsberger failed to report production to the ODNR and the county auditor. *Id.* at ¶ 23. We stated that the failure to file production reports with the ODNR did not add to the determination of

whether a well is producing.  *Id.*, citing *Mobberly v. Wade*, 7th Dist. No. 13 MO 18, 2015-Ohio-5287, ¶ 16.

**{¶39}** Third, we noted that while Sulsberger testified as to his Schedule C tax forms, they were not offered into evidence.  *Id.* at ¶ 24.  We noted that although Sulsberger testified that his Schedule C showed a loss in certain years, he testified that the form contained business expenses for all of his business projects, not just the wells in question.  *Id.*  Therefore, while his Schedule C may have shown that his projects as a whole were unprofitable, it did not provide information specific to the wells at issue.  *Id.*  Thus, we found it had no evidentiary value to the issue of production in paying quantities.  *Id.*

**{¶40}** Fourth, we noted that the trial court relied on its finding that Sulsberger was a poor record keeper.  *Id.* at ¶ 25.  We found that aside from its reliance on Sulsberger's lack of records, BFT did not present any evidence to support its position that the wells were not producing in paying quantities.  *Id.*

**{¶41}** Fifth, we noted that Sulsberger regularly paid royalties to BFT.  *Id.* at ¶ 25, 28.  And we stated that while not conclusive, the payment of royalties is some evidence of production in paying quantities.  *Id.* at ¶ 28.

**{¶42}** Finally, we noted that the trial court relied on the finding that Sulsberger's company stood to profit by holding on to the lease until deep drilling on the property was completed.  *Id.* at ¶ 29.  We found this finding to be irrelevant to the issue of paying quantities.  *Id.*

**{¶43}** Based on all of the above, this court concluded:

> While Mr. Sulsberger's lack of records is troubling and he clearly convinced the trial court that he was untruthful, the fact remains that the Burkhart family, on behalf of the Trust, had the burden of proving by means of evidence that the wells (that they admit produce) do not produce in paying quantities. In support of shifting the burden of proof to Appellants, Appellee argued at hearing that this would force them into proving the negative. It is apparent the Burkhart family had the

ability to use discovery to uncover evidence necessary to prove their assertions. Instead of subpoenaing Tri–County's records or subpoenaing any other type of evidentiary records on the issue of whether paying quantities of either gas or oil were being produced, the Burkhart family insists that Appellants were required to prove the production from the wells was adequate in order to withstand their demands for termination of the lease. As the Trust has failed to meet its burden, the trial court's judgment is erroneous.

*Id.* at ¶ 29.

**{¶44}** In this case too, the trial court incorrectly placed the burden on Miley and Antero to prove that the Well was producing in paying quantities instead of placing the burden on Burkhart to prove that the Well was not producing in paying quantities. The trial court here, like the trial court in *BFT*, considered several factors we deemed in *BFT* to be irrelevant to a determination of paying quantities.

**{¶45}** First, the trial court found that Miley's tax returns revealed that Miley declared a loss of $10,211 in 2012, and a loss of $76,126 in 2013. It also found that the tax returns demonstrated that much of Miley's gross revenues did not come from the sale of oil and gas but from contract work that Jeff Miley performed for other oil and gas operators.

**{¶46}** Notably absent from the trial court's finding here is any mention of how the Well at issue performed. Miley's tax returns are not specific to the Well. They encompass all of Miley's operations including, as the trial court noted, work Jeff Miley performed for other oil and gas operators. And while Miley as a company overall may have declared losses in 2012 and 2013, there is no indication as to whether the Well produced oil and gas in paying quantities in those years. Therefore, the court erred in relying on this factor.

**{¶47}** Second, the trial court found that Miley did not report any production on any of its wells, including the Well at issue, until late 2013. At that time, after a suggestion by Antero, Miley submitted production reports to the ODNR. The trial

court then, "clearly infer[ed] that the 2011 and 2012 production numbers are mere estimates by Mr. Miley." It also found it "significant" that Miley did not report any production in 2011 or 2012.

**{¶48}** We stated in *BFT* that "the failure to file production reports with ODNR does not add to the determination of whether a well is producing." *Id.* at ¶ 23, citing *Mobberly*, 2015-Ohio-5287, ¶ 16. Thus, the fact that Miley did not timely submit production reports to the ODNR does not help to determine whether the Well produced in paying quantities.

**{¶49}** Third, the trial court found it was undisputed by Jeff Miley that it would be "virtually impossible" for a third party to look at documentary evidence presented by Miley and verify that the Lease was profitable.

**{¶50}** This statement by the trial court is an example of how the trial court placed the burden of proof on Miley to show production in paying quantities. We found similar statements by the trial court in *BFT*, to show that the trial court impermissibly shifted the burden of proof. *Id.* at ¶ 12 (where the trial court found Sulsberger did not keep a business ledger, did not have any electronic bookkeeping software, and did not keep a list of the income versus expenses). Thus, the trial court improperly shifted the burden from Burkhart to Miley.

**{¶51}** Fourth, the trial court found that Miley had a "major financial incentive" to claim the Well is profitable and Miley "obviously stand[s] to profit immensely by maintaining the current Lease." The court found that the deep rights were assigned to Antero whose production efforts could result in a "financial windfall" to Miley.

**{¶52}** In *BFT*, we specifically found that the trial court's reliance on the finding that the lessee stood to profit by holding onto the lease until deep drilling was completed was irrelevant to the issue of paying quantities. *Id.* at ¶ 29. In fact, we stated that whether the lessee would profit from deep drilling activities "has no bearing at all on the pertinent determination." *Id.* Thus, the trial court here erred in relying on this factor.

**{¶53}** Fifth, the trial court found that a lessee who claims its lease is profitable

yet the tax returns show a loss "casts real doubt on his actual profit."

**{¶54}** This statement by the trial court is another example of shifting the burden to prove paying quantities to Miley.

**{¶55}** Finally, there was no dispute here that Miley had been paying royalties to Burkhart, yet the trial court did not mention this in its findings. And "[w]hile not conclusive evidence, royalty payments can be evidence of production in paying quantities." *RHDK Oil & Gas, L.L.C. v. Dye*, 7th Dist. No. 14 HA 0019, 2016-Ohio-4654, ¶ 30.

**{¶56}** The party who asserts a claim in an oil and gas case, just as in any other civil case, carries the burden of proof. *Burkhart Family Trust*, 2016-Ohio-4817, at ¶ 13. Thus, in this case, the burden was on Burkhart to prove that the Well was not producing in paying quantities. The trial court's findings, however, demonstrate that it placed the burden on Miley and Antero to prove the Well was producing in paying quantities. Moreover, in making its determination, the trial court relied on several factors this court has found to be irrelevant to a paying quantities determination. Therefore, the trial court erred in finding that the Well was not producing in paying quantities and in entering judgment in favor of Burkhart.

**{¶57}** Accordingly, Antero's second assignment of error has merit and is sustained. Likewise, Miley's second assignment of error has merit and is sustained.

**{¶58}** Antero's first assignment of error states:

THE TRIAL COURT ERRED IN ENTERING A JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE.

**{¶59}** Antero's third assignment of error states:

THE TRIAL COURT'S JUDGMENT AND DECISION ISSUED MAY 27, 2015 ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND A VIOLATION OF SUBSTANTIAL JUSTICE.

**{¶60}** Antero's fourth assignment of error states:

THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL TO APPELLEE PURSUANT TO CIVIL RULE 59.

{¶61} Antero's fifth assignment of error states:

THE TRIAL COURT ERRED IN VACATING ITS NOVEMBER 7, 2014 JUDGMENT IN ITS ENTIRETY.

{¶62} Miley's first assignment of error states:

THE TRIAL COURT ERRED IN VACATING ITS PRIOR JUDGMENT ENTRY AND ENTERING A JUDGMENT IN FAVOR OF APPELLEE ON MAY 27, 2015.

{¶63} Miley's third assignment of error states:

THE TRIAL COURT'S SECOND JUDGMENT ENTRY DATED MAY 27, 2015 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND A VIOLATION OF SUBSTANTIAL JUSTICE.

{¶64} Given our resolution of Antero's second assignment of error and Miley's second assignment of error, the remaining assignments of error are moot.

{¶65} For the reasons stated above, the trial court's judgment is hereby reversed. Judgment is entered in favor of Antero and Miley.

DeGenaro, J., concurs.

Robb, P.J., concurs.